IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                             No. CR 14-4061 JB

LUCAS JAMES MALDONADO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Report, filed July 25, 2017 (Doc. 60)("Objections"). The primary issues are: (i) whether the Court should apply a 2-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B), because Defendant Lucas Maldonado's offense involved a destructive device; (ii) whether the Court should apply a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), because Maldonado used or possessed a firearm in connection with another felony offense; and (iii) whether the Court should apply a 2-level enhancement under U.S.S.G. § 3C1.2, because Maldonado recklessly created a substantial risk of death or serious bodily injury to another person while fleeing law enforcement.[1] The Court concludes that enhancements are warranted under U.S.S.G.

---

[1]Maldonado made two other objections, but both are moot. First, Maldonado objected to his offense level calculation under U.S.S.G. § 2K2.1(a)(3), because, according to Maldonado, he did not use a semiautomatic weapon capable of accepting a large-capacity magazine in the offense of conviction. See Objections ¶ 1, at 2. Maldonado does admit, however, that he was arrested with a semiautomatic weapon capable of accepting a large-capacity magazine before the offense of conviction. See Objections ¶ 1, at 3. At the sentencing, the United States admitted that it did not have the semiautomatic firearm or magazine in custody, nor had any agent analyzed the gun or magazine, and withdrew its contention that the offense level for Maldonado should be 22 under U.S.S.G. § 2K2.1(a)(3). Draft Transcript of the Sentencing Hearing at 4:15-21, taken August 2, 2017 (Torrez)("Tr."); id. at 6:18-19 (Torrez); id. at 9:21-24 (Torrez); id. at 11:3 (Court). The Court notes that, had the United States verified the gun and magazine, an

§ 2K2.1(b)(3)(B), § 2K2.1(b)(6)(B), and § 3C1.2, so the Court overrules Maldonado's Objections.

## FACTUAL BACKGROUND

The Objections involve two incidents Maldonado had with state law-enforcement agents -- separate from the offense of conviction -- in which the state either released Maldonado or he evaded arrest. See Presentence Investigation Report ¶¶ 11-15, at 5-6, filed April 7, 2017 (Doc. 54)("PSR"). The first incident occurred on February 8, 2013, and involved Maldonado refusing to comply with a traffic stop. See PSR ¶ 11, at 5. While Maldonado was traveling at a high rate of speed, a New Mexico police officer signaled Maldonado to pull over. See PSR ¶ 11, at 5. Instead of complying, Maldonado zipped away from the officer at over 100 miles per hour. See PSR ¶ 11, at 5. Maldonado eventually lost control of the car, and jumped from the moving vehicle. See PSR ¶ 11, at 5. He sprinted from the scene with a black backpack and dropped a magazine loaded with .45 caliber ammunition as he ran. See PSR ¶ 11, at 5. He then hurdled a wall. See PSR ¶ 11, at 5. Maldonado escaped arrest. See PSR ¶ 11, at 5. A .45 caliber handgun was later recovered near the wall Maldonado vaulted. See PSR ¶ 11, at 5. A second magazine with nine rounds of 9mm ammunition was located in the front seat of the car. See PSR ¶ 11, at 5. Maldonado's charge for this offense remains pending. See PSR ¶ 11, at 5.

---

offense level of 22 under U.S.S.G. § 2K2.1(a)(3) would have been proper. As the Court explains, infra, at 10-13, a preponderance of the evidence shows that Maldonado's possession of a semiautomatic firearm and a large-capacity magazine at an earlier date was part of an "ongoing series of offenses." U.S.S.G. § 1B1.3. The Court, therefore, could have considered Maldonado's possession of the firearm and large-capacity magazine in calculating his offense level for the offense of conviction. Second, Maldonado objected to the enhancement applied under U.S.S.G. § 2K2.1(b)(4)(B) for possession of a firearm without a serial number, see Objections ¶ 3, at 4, but that objection is moot, because the United States and United States Probation Office agree that the enhancement does not apply, see Addendum to the Presentence Report at 2-3, filed July 28, 2017 (Doc. 61); United States' Response to Defendant's Objections to the Presentence Report at 1, 5, 9, filed August 1, 2017 (Doc. 63).

The second incident happened on January 31, 2014, and concerned a stolen car, more firearms, and methamphetamine. See PSR ¶ 12, at 5. An Albuquerque police officer, conducting a random parking lot patrol, found Maldonado entering a stolen vehicle with his eight-year-old son, who was wearing a backpack. See PSR ¶ 12, at 5. The officer searched the backpack and discovered two unloaded AK-47 magazines, a loaded .233 caliber machine pistol, and a cache of more ammunition of varying calibers. See PSR ¶ 12, at 5. A search of Maldonado yielded forty grams of methamphetamine. See PSR ¶ 12, at 5. Maldonado was arrested, but his case was subsequently dismissed. See PSR ¶ 12, at 5. The charges, however, were later refiled, and that case remains pending. See PSR ¶ 12, at 5.

Maldonado was involved in two other relevant incidents, one in February, 2014, and the other in June, 2015.[2] See Superseding Indictment at 1-3, filed July 30, 2015 (Doc. 11)("Indictment").[3] In February, 2014, Bernalillo County detectives observed Maldonado visiting the residence of a known methamphetamine dealer and stopped Maldonado in his vehicle after he left the home. See PSR ¶ 13, at 5. A pat-down search yielded an empty gun holster on Maldonado's belt. See PSR ¶ 13, at 5. The detectives later uncovered a loaded Ruger model P345 .45 caliber pistol on the car's passenger side floorboard. See PSR ¶ 15, at 6. The pistol fit Maldonado's holster. See PSR ¶ 22, at 8. A records check revealed that Maldonado was a convicted felon. See PSR ¶ 15, at 6. Maldonado was charged with being a felon in possession of a firearm, and subsequently released on bond. See PSR ¶ 15, at 6.

---

[2]Pursuant to the Plea Agreement, the United States agreed to dismiss Counts 1 and 3 of the Superseding Indictment. See Motion to Dismiss Counts 1 and 3 of Superseding Indictment Without Prejudice at 1, filed August 4, 2017 (Doc. 66)("Motion to Dismiss"). Count 1 was the only count to involve the February, 2014 incident. See Superseding Indictment at 1-3, filed July 30, 2015 (Doc. 11). The February, 2014 incident is, thus, not the offense of conviction.

[3]There are two docket entries for the Indictment. The Court cites to the redacted version.

In 2015, the Bernalillo County Sherriff's Department ("BCSO") learned that Maldonado was living in, and distributing methamphetamine, from an apartment in southwest Albuquerque. See PSR ¶ 16, at 6. On June 10, 2015, BCSO detectives spotted Maldonado leaving that apartment with a woman, Lorraine Duran, and observed Maldonado placing items into a black Honda Accord. See PSR ¶ 16, at 4; Plea Agreement at 4, filed February 9, 2017 (Doc. 51)("Plea").[4] Detectives subsequently approached and arrested Maldonado. See PSR ¶ 16, at 4. When the detectives looked in the vehicle, they saw a black semiautomatic handgun on the vehicle's center console. See PSR ¶ 17, at 6; Plea at 4. Bureau of Alcohol, Tobacco, and Firearm agents subsequently appeared at the scene and also observed the gun in the car. See PSR ¶ 17, at 6.

After obtaining a search warrant, ATF agents recovered the gun and also discovered a firearm magazine in a backpack found in the car's backseat. See PSR ¶ 19, at 7; Plea at 4. The handgun was a loaded Smith & Wesson model SW40VE .40 caliber pistol and it had one round in the chamber. See PSR ¶ 19, at 7; Plea at 4. The firearm magazine was loaded with twelve rounds of .40 caliber ammunition, and it fit the .40 caliber pistol. See PSR ¶ 19, at 7; Plea at 4. An ATF agent later tested the gun, and it functioned as designed. See PSR ¶ 20, at 7; Plea at 4.

There was also a briefcase and body armor in the black Honda Accord. See PSR ¶ 17, at 6. The briefcase had a small baggie containing a material suspected to be heroin,[5] a glass pipe, and syringes. See PSR ¶ 19, at 7. The body armor was labelled with the Defendant's alias -- "Ruckus." See PSR ¶ 19, at 7.

---

[4]The Plea agreement indicates that it was federal agents that spotted Maldonado accessing the black Honda Accord. See Plea at 4. Whether it was state or federal agents who observed and later arrested Maldonado is immaterial to the Court's analysis.

[5]The substance was never tested.

The agents also searched Maldonado's apartment. See PSR ¶ 18, at 6-7. In plain view was a modified "sawed off" shotgun. PSR ¶ 18, at 6.[6] Agents later determined that the shotgun was a Savage Arms model 311A 12-gauge double-barrel shotgun with a barrel length of eighteen inches, an overall length of twenty-eight inches, and a bore diameter of .73 inches. See PSR ¶¶ 18-20, at 7. Agents also recovered two rounds of 12-gauge ammunition from the apartment. See PSR ¶ 18, at 7.

## ANALYSIS

The Court overrules Maldonado's Objections that are not moot. The Court concludes that it should apply a 2-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B), because a shotgun with a bore diameter of .73 inches is a destructive device. A 4-level enhancement for possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B) is appropriate, because the January, 2014 offense was highly similar to the offense of conviction, and similar offenses were repeated over time. Finally, the Court applies a 2-level enhancement under U.S.S.G. § 3C1.2, because Maldonado recklessly created a substantial risk of death or serious bodily injury to another person by fleeing from law enforcement in a car at over 100 miles per hour. That offense was also highly similar to the offense of conviction.

### I. THE COURT OVERRULES MALDONADO'S OBJECTION TO A 2-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2K2.1(b)(3)(B).

Section 2K2.1(b)(3)(B) provides for a 2-level enhancement if "the offense involved . . . a destructive device" as 26 U.S.C. § 5845(f) defines that term. A destructive device is

> any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other

---

[6]At the sentencing, the United States argued that the shotgun was "not a sawed off shotgun," Tr. at 12:12 (Torrez), even though it had been modified, because its barrel length was still within legal limits, see Tr. at 13:12-14 (Torrez). The Court will discuss below whether that distinction affects its Sentencing Guidelines analysis.

propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes.

26 U.S.C. § 5845(f). The Secretary in this provision refers to the Secretary of the Treasury, but the Secretary of the Treasury delegated his duties and authorities under 26 U.S.C. § 5845 to the Director of the Bureau of Alcohol, Tobacco, and Firearms. See Establishment of the Bureau of Alcohol, Tobacco and Firearms, T.D.O. 221, 1972-1 C.B. 777 ¶ 2(a), at *1 (June 6, 1972). See also Demko v. United States, 44 Fed. Cl. 83, 84 (Fed. Cl. 1999)(Miller, J.). Thus, "the only types of firearms that are not considered destructive devices for the purposes of U.S. Sentencing Guidelines § 2K2.1 are those that are used solely for sporting, recreational, or cultural purposes, or by necessary inference, ones that have a bore of one-half inch or less in diameter." United States v. Wynn, 365 F.3d 546, 552 (6th Cir. 2004), vacated on other grounds, 534 U.S. 1102 (2005)(citations omitted).

Here, Maldonado's modified Savage Arms model 311A 12-gauge shotgun is a "destructive device" under § 5845(f), because it has a bore diameter of .73 inches. See PSR ¶ 20, at 7. Maldonado objects that the shotgun is "exempt from the .50 caliber clause because it is a sporting rifle." Objections at 3. Maldonado does not, however, cite any finding by the ATF Director as to the rifle's status as a sporting rifle, cf. United States v. Hardy, 393 F.3d 747, 749 (8th Cir. 2004)(concluding that a sawed-off shotgun was a destructive device and stressing that "[n]either side points to any finding by the Secretary" regarding such a shotgun), and the Court could not locate one.[7] Moreover, even if the shotgun, as manufactured, is considered a sporting

---

[7]The Court could find only two ATF determinations considering whether a firearm was suitable for sporting purposes, and the ATF concluded in both that a shotgun with a bore diameter greater than one-half inch was not suitable for sport. See ATF Rul. 94-1 (ruling that a USAS-12 shotgun with a bore of more than one-half inch was not suitable for sporting

rifle, Maldonado's modification likely renders it unsuitable for sporting purposes. Indeed, courts routinely hold that modifications render shotguns more dangerous and less likely to be used for sporting or recreational purposes. See, e.g., United States v. Miller, 721 F.3d 435, 442 (7th Cir. 2013)("People do not shorten their shotguns to hunt or shoot skeet. Instead, the shortened barrel makes the guns easier to conceal."); United States v. Shaw, 670 F.3d 360, 368-69 (1st Cir. 2012)(Boudin, J., concurring); United States v. Hardy, 393 F.3d at 749; United States v. Adams, 560 F. App'x 552, 554 (6th Cir. 2014)(unpublished). The Court thus concludes that Maldonado's modified shotgun is a "destructive device" under § 2K2.1(b)(3)(B).

## II. THE COURT WILL OVERRULE MALDONADO'S OBJECTION TO A 4-LEVEL ENHANCEMENT UNDER § 2K2.1(b)(6)(B).

Section 2K2.1(b)(6)(B) advises that a 4-level enhancement applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Application note 14 explains that § 2K2.1(b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." U.S.S.G. § 2K2.1 cmt. n.14. In the drug context, the enhancement applies if the "firearm is found in close proximity to drugs." U.S.S.G. § 2K2.1 cmt. n.14.

Maldonado's January 31, 2014 incident with the police establishes that a 4-level enhancement is proper. He satisfies the firearm possession requirement, because, on that date, Maldonado was found with a .233 caliber machine pistol. See PSR ¶¶ 12, 32, at 5, 9. Although the pistol was located in Maldonado's eight-year-old son's backpack, Maldonado still possessed the firearm, as § 2K2.1(b)(6)(B) requires, because he "knowingly h[e]ld[] the power and ability to exercise dominion and control over [the] firearm" that his eight-year-old son carried. United

---

purposes); ATF Rul. 94-2 (ruling that the Strike-12/Streetsweeper shotgun with a bore of more than one-half inch was not suitable for sporting purposes).

States v. Hill, 224 F. App'x 825, 829 (10th Cir. 2007)(unpublished).[8] At any time, Maldonado had the ability to take his son's backpack or order his young child to hand over the backpack with the gun and his son would have likely complied.[9]

Possession of a firearm, however, is not enough -- it must be in connection with another felony offense. See U.S.S.G. § 2K2.1(b)(6)(B). Knowing possession with intent to distribute more than five grams of a methamphetamine is a federal felony offense. See 21 U.S.C. § 841(a)(2), (b)(1)(B)(viii).[10] A preponderance of the evidence supports that Maldonado knowingly possessed the forty grams of methamphetamine on him and intended to distribute it. His knowing possession is self-evident from the methamphetamine's location on his person. See PSR ¶ 12, at 5. A preponderance of the evidence also supports a finding that Maldonado intended to distribute the methamphetamine. For example, state and federal agents had information from a confidential informant that Maldonado had been distributing methamphetamine in Albuquerque, New Mexico. See PSR ¶ 16, at 6. The amount of

---

[8]United States v. Hill is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Hill, United States v. Bateman, United States v. Gray, United States v. De Rangel, United States v. Bonner, United States v. Rumley, and United States v. Davidson, have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

[9]The Court also concludes that the pistol was Maldonado's and not his son's, because it is unlikely that an eight-year-old somehow purchased and stashed a machine pistol, AK-47 magazines, and other ammunition in his school backpack. See PSR ¶ 12, at 5.

[10]Intentional possession of methamphetamine is also a felony offense under New Mexico law. See N.M. Stat. Ann. §§ 30-31-23(E)

- 8 -

methamphetamine -- forty grams -- also suggests that the methamphetamine was for distribution and not for Maldonado's personal use. See United States v. Nicholson, 17 F.3d 1294, 1299 (10th Cir. 1994)("An intent to distribute may be inferred from the possession of a large quantity of a controlled substance."); United States v. De Rangel, 686 F. App'x 614, 615-16 (10th Cir. 2017)(unpublished)(finding no instructional error where a jury convicted a woman on possession with intent to distribute methamphetamine when the amount found was 25.8 grams and the only other evidence of distribution was a digital scale); United States v. Bonner, 1998 WL 894949, at *1 (10th Cir. 1998)(unpublished)(concluding that the evidence supported a possession with intent to distribute methamphetamine conviction where, inter alia, a dealer sold to the defendant 8.1 grams of methamphetamine, and "fronted" 42.5 more grams to the defendant to be repaid later). Finally, firearms located near drugs usually indicates that drug dealing is afoot, and, as already noted, Maldonado was found not only with methamphetamine, but also with a machine pistol, AK-47 magazines, and a cache of other ammunition. See United States v. Bateman, 218 F. App'x 759, 762 (10th Cir. 2007)(noting that "customary accouterments of drug distribution" include firearms). Thus, a firearm in Maldonado's possession was "found in close proximity to drugs," U.S.S.G. § 2K2.1 cmt. n.14, and "had the potential of facilitating, another felony offense or another offense," U.S.S.G. § 2K2.1 cmt. n.14, namely, "to facilitate illegal drug transactions by helping [Maldonado] protect himself and his drug supply," United States v. Gambino-Zavala, 539 F.3d 1221, 1230 (10th Cir. 2008)(applying a 4-level enhancement, because police discovered multiple guns in different rooms of an apartment and heroin in the kitchen).

Maldonado asserts, however, that the January 31, 2014 offense -- illegal firearm possession -- is irrelevant, because it was never charged, and because "it did not occur during the commission of the offense of conviction, in preparation for that offense, or in an attempt to avoid

detection or responsibility." Objections at 4. Maldonado's objection is unavailing. In determining whether a § 2K2.1(b)(6)(B) enhancement applies, the Court may consider, as relevant conduct, acts and omissions that have not been charged and have not resulted in a conviction. See U.S.S.G. § 2K2.1 cmt. n.14 ("Another felony offense . . . means any federal, state, or local offense, . . . regardless of whether a criminal charge was brought, or a conviction obtained."). Relevant here, the Court may consider a defendant's acts "that were part of the same course of conduct . . . as the offense of conviction," U.S.S.G. § 1B1.3(a)(2), i.e., acts that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses," U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). See U.S.S.G. § 2k2.1 cmt. n.14 (E)(ii). Factors to consider in a same-course-of-conduct analysis include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between offenses." U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). "When one of the above factors is absent, a stronger presence of least one the other factors is required." U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). A "behavior pattern of unlawfully possessing [] firearms over a relatively short period of time meets the same course of conduct requirement." United States v. Windle, 74 F.3d 997, 1001-02 (10th Cir. 1996)(citing United States v. Perdomo, 927 F.2d at 115). In United States v. Windle, for example, the Tenth Circuit upheld a 4-level enhancement where the "offenses included the unlawful possession of five firearms throughout a four to five month period." 74 F.3d at 1001.

The Court concludes that between January, 2014 and June, 2015 Maldonado was engaged in the same course of conduct, so the 4-level enhancement applies. See U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). The United States Court of Appeals for the Tenth Circuit has determined:

> Thus, same course of conduct looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be connected

together by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an identifiable behavior pattern, (citation omitted) of specified criminal activity.

United States v. Roederer, 11 F.3d 973, 979 (10th Cir. 1993). As the Court noted, Maldonado was found with an assortment of firearms and ammunition caches in 2013, 2014, and 2015. See PSR ¶¶ 11-19, at 5-7. The offense of conviction was felon in possession of a firearm and ammunition. See Indictment at 2. The conduct in January, 2014 was also a felon in possession of a firearm and ammunition. See PSR ¶ 12, at 5. The conduct, accordingly, was highly similar. That the same conduct occurred in 2013, 2014, and 2015 demonstrates that it was repetitive. See U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). On the time factor, the offense of conviction occurred on June 10, 2015, about a year and a half after the January, 2014 incident. Although the 2014 incident occurred a good deal after the offense of conviction, the Court concludes that the high similarity and repetitiveness of the offenses within a relatively short amount of time -- three years -- sufficiently demonstrate an "ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). See United States v. Roederer, 11 F.3d at 979 ("No one characteristic is always adequate to determine similarity of offenses, and each case depends largely on its own facts.").[11]

The Court also concludes that, by a preponderance of the evidence, there was a common scheme or plan, so the 4-level enhancement applies. See U.S.S.G. § 1B1.3 cmt. n.5 (B)(i). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.5 (B)(i) (emphasis in original). Here, there are common threads between the January, 2014 offense, the

---

[11]The Court also notes that the January, 2014 incident occurred less than a month before the February, 2014 incident, which was charged, but later dropped pursuant to the Plea. See Motion to Dismiss at 1.

offense of conviction, and the other events listed above, which suggest an ongoing drug-dealing venture. Firearms and ammunition were always found on or near Maldonado. A preponderance of the evidence also shows that Maldonado's munitions were not of the hunting or personal self-defense variety; they included a sawed-off shotgun, AK-47 magazines, and a machine pistol. See PSR ¶¶ 12, 18, at 5-7. He also had personalized body armor. See PSR ¶ 19, at 7. This arsenal suggests that Maldonado was involved in some activity which required heavy-duty weaponry. That activity appears to be drug dealing, because an informant told police that Maldonado was distributing methamphetamine, Maldonado was caught with methamphetamine in January, 2014 and caught with another suspected controlled substance in June, 2015. See PSR ¶¶ 16, 19, at 7; United States v. Burnett, 1998 WL 104718, at *3 (10th Cir. 1998)(unpublished)("[F]irearms 'have generally been viewed as tools of the trade -- that is means for the distribution of illegal drugs.'")(quoting United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir. 1991)). Accordingly, a common purpose appears to animate the 2014 offense -- possessing a machine pistol, an ammunition cache, and forty grams of methamphetamine -- and the instant offense -- possessing a sawed-off shotgun, other ammunition, and suspected heroin -- namely, drug distribution. See United States v. Rumley, 1993 WL 425384, at *2 (10th Cir. 1993)(unpublished)(ruling that manufacturing different types of drugs for an ongoing drug-dealing scheme was a common purpose under U.S.S.G. § 1B1.3 cmt. n.5 (B)(i)). The Court will therefore apply a 4-level enhancement under § 2K2.1(b)(6)(B).

### III. THE COURT WILL APPLY A 2-LEVEL ENHANCEMENT FOR RECKLESS ENDANGERMENT UNDER § 3C1.2.

Section 3C1.2 provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Here, the PSR applies the

enhancement based on an allegation that, on February 8, 2013, "while in possession of a firearm, the defendant fled from the police, traveling at 100 mph before he lost control of his vehicle." PSR ¶ 35, at 9. Maldonado objects that this enhancement does not apply for the same reasons that U.S.S.G. § 2K2.1's enhancement does not apply -- i.e., there is no connection between the offense of conviction and the February 8, 2013 conduct. See Objections at 4-5. The Court concludes that this argument is unpersuasive.

Several United States Courts of Appeals have concluded that a nexus must exist between a defendant's reckless endangerment and his crime of conviction for the § 3C1.2 enhancement to apply. See, e.g., United States v. Dial, 524 F.3d 783, 787 & n.2 (6th Cir. 2008)(concluding that § 3C1.2 has a nexus requirement); United States v. Southerland, 405 F.3d 263, 267-68 (5th Cir. 2005)(finding a nexus requirement "in light of § 1B1.3's express requirement that Chapter Three adjustments be based upon acts or omissions occurring during the offense of conviction, [etc.]"); United States v. Duran, 37 F.3d 557, 559-60 (9th Cir. 1994)(assuming, without deciding, that § 3C1.2 requires a nexus). The Tenth Circuit, however, "has never required a nexus." United States v. Gray, 512 F. App'x 803, 808 (10th Cir. 2013)(unpublished). Indeed, the Tenth Circuit has explicitly expressed "doubt[] whether there is a nexus requirement since reckless endangerment may simply be part of relevant conduct under § 1B1.3." United States v. Davidson, 283 F. App'x 612, 615 (10th Cir. 2008)(unpublished). Consequently, the Tenth Circuit has "rejected the argument that the reckless endangerment must occur during the flight to avoid arrest for the particular offense of conviction." United States v. Davidson, 283 F. App'x at 614 (citing United States v. Green, 2001 WL 50754, *2 (10th Cir. 1999)(unpublished)). Although the Tenth Circuit's discussion of the reckless-endangerment enhancement has been

confined to unpublished opinions, the Court nevertheless finds these opinions -- which consistently reject a nexus requirement -- to be persuasive.

Here, Maldonado "recklessly created a substantial risk of death or serious bodily injury . . . in the course of fleeing from a law enforcement officer," U.S.S.G. § 3C1.2, when he fled from police at 100 mph before losing control of his vehicle in February 2013, see PSR ¶ 35, at 9; United States v. Gray, 512 F. App'x at 807 (concluding that a high-speed flight from police officers "constituted reckless endangerment under U.S.S.G. § 3C1.2"). As with the January, 2014 incident, the Court concludes that Maldonado was engaged in the same course of conduct, so a 2-level enhancement applies. Maldonado was found with an assortment of firearms and ammunition caches in 2013, 2014, and 2015. See PSR ¶¶ 11-19, at 5-7. The conduct, accordingly, was highly similar and repetitive. See U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii); United States v. Roederer, 11 F.3d at 979 ("Thus, same course of conduct looks to whether the defendant repeats the same type of criminal activity over time.").[12] Thus, the high-speed chase is relevant conduct under § 1B1.3, and the Court will apply a 2-level enhancement under § 3C1.2.

---

[12]The Court notes that the time between the 2013 incident and the 2015 offense of conviction was about two-and-a-half years. This time interval gives the Court pause. Engaging in criminal activity once and then later committing a similar criminal activity does not, as a matter of course, mean that one is engaging in the "same course of conduct." U.S.S.G. § 1B1.3 cmt. n.5 (B)(ii). In another case, given this time gap and slightly different facts, the Court might conclude that the February, 2013 incident was not the same course of conduct as the offense of conviction. See United States v. Roederer, 11 F.3d at 979 ("[E]ach case depends largely on its own facts."). The Court does so here, because the 2013 and 2015 incidents did not occur in a vacuum. Several other incidents with high similarity occurred. And, as the Court has already explained, Maldonado's conduct suggests a finding, by a preponderance of the evidence, of ongoing drug-distribution activity. Although no drugs were found during the February, 2013 incident, a gun and ammunition were, which were similar to the other types of guns and ammunition found during Maldonado's other encounters with law enforcement in which he did have drugs or suspected drugs on him. Finally, the high-speed flight suggests, by a preponderance of the evidence, that Maldonado may have had more than just a gun to conceal. These facts and determinations lead the Court to conclude that Maldonado was engaged in the same course of conduct in February, 2013 as he was in the offense of conviction.

**IT IS ORDERED** that the Objections that are not moot in Defendant Lucas Maldonado's Defendants' Objections to the Presentence Report, filed July 25, 2017 (Doc. 60), are overruled.

                                                  _____
                                                  UNITED STATES DISTRICT JUDGE

*Counsel*:

James S. Tierney
   Acting United States Attorney
Presiliano Torrez
Lynn Wei-Yu Wang
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Alonzo J. Padilla
    Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

     *Attorney for the Defendant*